**Leo P. McCURNIN, Jr., Plaintiff-Appellee,**

v.

**KOHLMEYER & COMPANY and Jack D. Drake, Defendants-Appellants.**

No. 72–3175
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Feb. 13, 1973.

York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

See also D.C., 340 F.Supp. 1338.

Charles Kohlmeyer, Jr., Earl S. Eichin, Jr., New Orleans, La., for defendants-appellants.

Peter G. Burke, Paul M. Haygood, New Orleans, La., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, GOLDBERG and MORGAN, Circuit Judges.

PER CURIAM:

Federal jurisdiction over this case initially was grounded upon a joinder of claims arising under the Commodities Exchange Act, the Securities Act of 1933 and the Securities Exchange Act of 1934 with a diversity claim arising under the Louisiana law of agency. The trial court below determined that none of the customer's (Appellee) federal claims had merit,[1] but, it asserted pend-

1. As a discussion of the basis alleged for these federal claims and the reasons for the trial court's rejection of them would add nothing to the disposition of this appeal, we abstain analysis.

ent jurisdiction over the state claim[2] and proceeded to find that the customer was entitled to recovery from the broker (Appellant) under prevailing Louisiana law. We affirm.

The dispute between the parties arose out of trading in the commodity market by McCurnin, the customer. The broker, Kohlmeyer and Company, through its employee Drake, also a co-Appellant, purchased cotton futures for customer at a price in excess of that authorized. He suffered a net loss in the transaction of $26,725.[3]

Upon learning of the unauthorized purchase McCurnin did not immediately and affirmatively repudiate the transaction, at least not by clear and unambiguous conduct. A period of three days elapsed before his market position was liquidated and thus before the full extent of the loss was realized. The broker contends that the customer's delay and his accompanying conduct subsequent to learning of the unauthorized purchase clearly manifested his intention to ratify the purchase and, furthermore, this delay was violative of his duty to mitigate damages.

The trial court, in a thorough and well reasoned opinion, 347 F.Supp. 573, rejected these arguments. The Judge found that the broker's conduct was violative of two codal Articles of the Louisiana Law of Mandate, La. Civil Code Articles 3010 and 3003.[4]

In response to the contention that the customer ratified, the trial Judge wrote:

"The conclusion that McCurnin failed to repudiate is mistaken. McCurnin had manifested his displeasure to Drake. He had been informed—misinformed—by Drake that there was nothing he could do but complete the transaction. It is true that Drake's optimism about the market had made both McCurnin and Drake sanguine that all might turn out well, but this false hope was never transmuted by McCurnin into approval of Drake's actions."

The Court held that the burden of proving ratification was on the broker and an intention to ratify an unauthorized act cannot be inferred when the conduct can be otherwise explained. For ratification to be implied, it must be shown that the principal actually had knowledge of the material and pertinent facts. Here the judge was entitled to conclude that the customer's error, whether error of law or fact, was clearly induced by the broker. The court held that the customer's effort to repudiate the unauthorized transaction was defeated by the broker.

Though the trial court agreed that the customer owed a duty to minimize his damages, it found that he had acted with reasonable promptness under the circumstances. Immediately upon

2. In deciding to assume pendent jurisdiction of the state claim the trial court correctly made the following determinations: (i) that the federal question raised was not "unsubstantial and frivolous;" (ii) that the state claims arose from identical facts on which the federal remedies were sought; and (iii) that since the case had been fully tried, it was in the interest of justice as well as judicial economy that the issue be decided on what was already a complete record.

3. The suit below was for $15,286.45. This was the amount of his credit balance at the time of the loss. The broker counterclaimed for $11,438.55, the amount remaining due if the customer had to bear the loss.

4. Article 3010 of the Louisiana Civil Code provides:

"Art. 3010. The attorney cannot go beyond the limits of his procuration; whatever he does exceeding his power is null and void with regard to the principal, unless ratified by the latter, and the attorney is alone bound by it in his individual capacity."

Article 3003 of the Louisiana Civil Code provides in part:

"Art. 3003. The attorney is responsible, not only for unfaithfulness in his management, but also for his fault or neglect."

learning that the broker required that he liquidate his position before they would consider making any adjustment, McCurnin ordered the cotton futures sold.

These were essentially all factual questions. The Judge found the facts. There it ends.

Affirmed.