**Glenn HILL, Plaintiff-Appellee,**

v.

**BACHE HALSEY STUART SHIELDS INCORPORATED, a Delaware corporation, Defendant-Appellant.**

No. 84–1532.

United States Court of Appeals, Tenth Circuit.

May 6, 1986.

Charles F. Brega (Cassandra G. Sasso and Julie K. McCurdy of Sherman & Howard, on briefs), Denver, Colo., for defendant-appellant.

John F. Head, Denver, Colo., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, LOGAN, Circuit Judge, and SEAY, District Judge.*

LOGAN, Circuit Judge.

Plaintiff, Glenn Hill, traded corn, pork belly, and cattle futures through the Denver office of the defendant, Bache Halsey Stuart Shields, Inc. After Hill lost nearly $50,000, he sued Bache. Hill's amended complaint in federal district court asserted Colorado state law claims for breach of contract and breach of fiduciary duty and claims under the federal Commodity Exchange Act (CEA), 7 U.S.C. §§ 1–26, for excessive trading, unauthorized trading, and misrepresentation or failure to disclose. A jury awarded Hill compensatory

---

* Honorable Frank H. Seay, Chief Judge, United States District Court for the Eastern District of Oklahoma, sitting by designation.

damages of $47,000, and punitive damages of $2,000,000.[1] Bache appealed.

We hold that (1) the district court erred in instructing the jury that mere negligent acts or "constructive fraud" can violate § 4b(A) of the CEA; (2) the district court erred in giving a broad fiduciary duty instruction; and (3) the district court erred in excluding all evidence that Hill traded commodity futures in an identical manner with another firm five months after he had stopped trading with Bache. We also hold that the district court had subject matter jurisdiction to award punitive damages on Hill's equitable state law claim for breach of fiduciary duty, and that the facts did not demonstrate as a matter of law that Hill ratified all of the trading done in his account.[2]

Plaintiff Hill is a farmer from Haxtun, Colorado. Defendant Bache is a Delaware brokerage corporation doing business in Colorado. In November 1979 Hill called Bache's Denver office and spoke with Wayne Wright, an account executive for Bache. Hill asserted at trial that he called Bache only to hedge his corn crop, but the later trading also included pork bellies and live cattle. Wright stated at trial that Hill did not want to hedge his corn crop.

After speaking with Wright, Hill opened a nondiscretionary trading account[3] with Bache, signing a Customer Agreement, a Commodity Suitability Letter, and a Risk Disclosure Statement. Hill then sent Bache a $10,000 check to fund expected trades. At this time Hill had a net worth

of $500,000. Subsequently, between November 1979 and February 1980, Wright made fifty-nine trades for Hill's account. During this period, in January 1980, President Jimmy Carter announced an embargo on grain shipments to the Soviet Union. This caused the corn, cattle, and pork belly markets to fall sharply, generating substantial losses for Hill. Hill sent Bache a total of $47,000 over the life of his account, and when Hill's account was liquidated in February 1980, it had a deficit balance of $2,390.

The record shows that Hill and Wright spoke with each other by telephone at least sixty-five times during the life of the account. Hill alleged at trial that, despite these phone conversations, none of his trades were discussed before they were made. Hill stated that he generally did not complain to Wright about the trading, because he was "not that kind of guy." R. II, 352. But he claimed that on at least three occasions he did complain that "[w]e were losing money, and he was getting into things that I didn't want him into." R. II, 353. Hill's expert testified that a comparison of the times of the verified phone conversations with the times of the trades demonstrated that there was no proper authorization for at least thirty-two transactions. That expert further testified that Wright had failed to time-stamp order tickets during or soon after his conversations with Hill, in violation of Commodity Futures Trading Commission (CFTC) Rule 1.35.[4]

---

1. The jury awarded Hill $44,261.50 for his excessive trading claim, $44,261.50 for his unauthorized trading claim, and $47,000.00 for his misrepresentation or failure to disclose claim. The jury awarded Hill $44,261.50 compensatory and $2,000,000 punitive damages for his state claim of breach of fiduciary duty and $47,000 compensatory damages on the state breach of contract claim. The court treated the compensatory damage awards as duplicate recoveries in arriving at the $47,000 total; it added $17,795.55 in prejudgment interest.

   The jury awarded Bache $2,390.50 on a counterclaim for breach of contract.

2. Because the case must be retried, we do not reach Bache's contentions that the punitive

damages were excessive and that the compensatory damages were calculated improperly.

3. For a nondiscretionary account an account holder must authorize each trade. For a discretionary account a broker may trade without an express authorization from the account holder for each transaction.

4. CFTC Rule 1.35 requires immediate time-stamping:

   "(1) Each futures commission merchant ... receiving a customer's ... order shall immediately upon receipt thereof prepare a written record of such order, including the account identification and order number, and shall record thereon by time-stamp or other timing

Bache argued that Hill had authorized all of the trading during the telephone conversations and that Wright's failure to time-stamp the order tickets did not establish that the instructions on the tickets were not Hill's. Wright stated at trial that Hill never complained before the embargo about the trading. The record shows that Hill received a written confirmation of each trade three or four days after it was made. Hill admitted that he read the confirmations but asserted that he did not understand them.

Hill also charged during trial that Wright had "churned" or excessively traded his account to increase commissions. Hill's expert testified that the extremely high commissions on Hill's account made it difficult, if not impossible, for Hill to break even. This expert relied on a 2.6 percent per day commission-to-average-equity figure purportedly existing in Hill's account to demonstrate the high volume of trading. Bache's experts countered that Hill's account could not have been churned, because Wright did not control the account and the trading was not excessive. One of Bache's experts also testified that Hill's commission-to-equity figure was misleading because of the methods used to arrive at it

and because of the embargo's market impact.

■ Finally, Hill charged that Wright had misrepresented and failed to disclose material facts. Hill pointed to Wright's alleged assurances that the trading would not be risky "if you use stops," R. II, 381, that losses could be controlled by "hedging," *id.* at 365, and that he would "take care of [Hill's] account," *id.* at 367. Hill further pointed to Wright's failure to fully discuss with him the actual mechanics and potential loss involved. The extent to which Hill ultimately relied on the misrepresentation evidence is unclear; throughout the trial the emphasis was on unauthorized trading and churning.[5] The churning, unauthorized trading, and misrepresentation evidence was used to establish both violation of CEA § 4b and violation of state law fiduciary duty rules.

## I

■ We hold that the district court improperly instructed the jury regarding the intent necessary for Bache and Wright to violate § 4b(A) of the CEA.

Section 4b of the CEA provides that:

---

device, the date and time, to the nearest minute, the order is received...."
17 C.F.R. § 1.35(a)(a–1).
Bache had an in-house "standard practice instruction" that corresponded to this CFTC rule on time-stamping. After citing 17 C.F.R. § 1.35(a–1)(1), this in-house instruction states: "this regulation requires that the [registered representative] note on all CEA commodity orders the time the [registered representative] received the order from the customer. In fact, if an order is received at home by the [registered representative], he must make a note of the time to the nearest minute that it was received and upon entering the order the following morning, make a pencilled notation of the time the order is being given to the order desk."
Bache Standard Practice Instruction at 68 (Sept. 2, 1974). A.R. IV, 720.
Violation of an internal rule of a brokerage house alone is not sufficient for imposition of liability on the broker. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Goldman,* 593 F.2d 129, 133–34 (8th Cir.), *cert. denied,* 444 U.S. 838, 100 S.Ct. 76, 62 L.Ed.2d 50 (1979); *cf. Carras v. Burns,* 516 F.2d 251, 260 (4th Cir.1975) (ex-

change margin rule). In addition, a failure to follow Rule 1.35 would not establish by itself unauthorized trading. *Murlas Bros. Commodities, Inc. v. Shearson Hayden Stone, Inc.,* Comm. Fut.L.Rep. (CCH) ¶ 21,094, at 24,407–08 (CFTC Aug. 15, 1980).

5. Hill initially asserted that Bache had violated all of § 4b. Near the conclusion of trial, counsel for Hill switched to reliance on § 4b(A) with regard to his CEA claim. By abandoning reliance on § 4b(B) and (C), counsel for Hill appeared to drop Hill's CEA misrepresentation claims. In closing argument, counsel for Hill mentioned only churning and unauthorized trading with regard to the CEA, although he also focused on misrepresentation with regard to Hill's state law claim of breach of fiduciary duty. The trial judge, however, instructed the jury on misrepresentation with respect to the CEA claim, and the jury returned a damages award regarding it. *See supra* note 1.

On retrial the court should separate the claims more carefully and distinguish the CEA claims from those under the state law breach of fiduciary duty.

"It *shall be unlawful* ... (2) for any person, in or in connection with any order to make, ... any contract of sale of any commodity for future delivery, made, or to be made, on or subject to the rules of any contract market, for or on behalf of any other person ...—

(A) *to cheat or defraud* or attempt to cheat or defraud such other person;

(B) *willfully* to make or cause to be made to such other person any false report or statement thereof, or willfully to enter or cause to be entered for such person any false record thereof;

(C) *willfully* to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such person...."

7 U.S.C. § 6b(A) (emphasis added). Hill claimed that Bache violated these federal antifraud provisions by churning his account, engaging in unauthorized trades, and misrepresenting or failing to disclose material facts to him. *See generally* Markham, *Customer Rights Under the Commodity Exchange Act*, 37 Vand.L.Rev. 1299, 1309, 1317, 1324 (1984) [hereafter cited as Markham].

The district court instructed the jury that even "constructive fraud" by a commodity futures broker[6] violated § 4b(A). The court defined constructive fraud as:

"a breach of duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive, to violate confidence or to injure public interests. Liability for constructive fraud under this statute may be based on negligent acts or omissions."

R. VI, 969.[7]

This circuit, however, has rejected an interpretation of § 4b that allows liability based on mere negligence, mistake, or inadvertence. *See Master Commodities, Inc. v. Texas Cattle Management Co.*, 586 F.2d 1352, 1356–57 (10th Cir.1978). We there held that "willful or fraudulent action is required for recovery." *Id.* at 1356. We were influenced principally by the fact that the statute is "plainly phrased in terms of fraudulent or willful conduct." *Id.* at 1355.

Other courts have applied a similar rationale in holding that § 4b, and § 4b(A) in particular, require a degree of intent beyond carelessness or negligence. *See, e.g., McIlroy v. Dittmer*, 732 F.2d 98, 102 (8th Cir.1984); *McCurnin v. Kohlmeyer & Co.*, 347 F.Supp. 573, 576 (E.D.La.1972), *aff'd*, 477 F.2d 113 (5th Cir.1973). And the conclusion that § 4b requires intent beyond negligence has been accepted widely.[8] *See Greenwood v. Dittmer*, 776 F.2d 785, 789 (8th Cir.1985) ("An expression of opinion may constitute fraud [under CEA § 4b] only if the person knew that the opinion was false when made."); *First Commodity Corp. v. Commodity Futures Trading*

---

**6.** Under the CEA terminology used in many of the cases, Wright and Bache are considered "futures commission merchants." This phrase refers to "individuals, associations, partnerships, corporations, and trusts engaged in soliciting or in accepting orders for the purchase or sale of any commodity for future delivery on or subject to the rules of any contract market...." 7 U.S.C. § 2; 17 C.F.R. § 1.3(p). We use the less technical term "commodity futures broker," which was the description used during closing argument at trial.

**7.** *See Gordon v. Shearson Hayden Stone Inc.,* Comm.Fut.L.Rep. (CCH) ¶ 21,016, at 23,975 (CFTC Apr. 10, 1980) (apparent source of court's "constructive fraud" instruction; negligent breach of fiduciary duty held enough for violation of § 4b(A)), *aff'd on other grounds sub*

*nom. Shearson Loeb Rhodes, Inc. v. Commodity Futures Trading Commission,* 80–7212, slip op. at 2, 673 F.2d 1339 (9th Cir.1982) (unpublished) (relying on CFTC's alternate finding that petitioner engaged in knowing conduct by carelessly ignoring the truth). *But see Hunter v. Madda Trading Co.,* Comm.Fut.L.Rep. (CCH) ¶ 21,242, at 25,204 n. 8 (CFTC Sept. 2, 1981); Markham, 37 Vand.L.Rev. at 1334–38.

**8.** This conclusion comports with the interpretation given to an analogous antifraud provision in federal securities law, § 10(b) of the 1934 Securities Exchange Act, 15 U.S.C. § 78j. "Scienter," or intent to deceive, manipulate, or defraud, is necessary for a violation of § 10(b). *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 214, 96 S.Ct. 1375, 1391, 47 L.Ed.2d 668 (1976).

*Commission*, 676 F.2d 1, 4–5 (1st Cir.1982) (foreign futures case stating that CEA § 4b, "which governs *domestic* futures transactions, has a specific willfulness, or 'scienter,' requirement." (emphasis in original)); *Commodities Futures Trading Commission v. Savage*, 611 F.2d 270, 283 (9th Cir.1979) ("to be charged with a violation of 4b(A), [defendant] must have known that he was cheating....."); *Haltmier v. Commodity Futures Trading Commission*, 554 F.2d 556, 562 (2d Cir.1977) ("evil motive" not required for violation of § 4b but broker must have acted "deliberately, knowing that his acts were unauthorized and contrary to instructions").

We therefore find the district court erred in its instruction on constructive fraud. On retrial the district court should instruct the jury that it must find willfulness for violation of § 4b or § 4b(A).

## II

We also hold that the district court's fiduciary instructions were erroneous.

### A

The district court began its CEA "fiduciary duty" instruction by reading § 4b(A) to the jury. It then stated that either actual fraud or "constructive" fraud would violate § 4b(A), an instruction we already have found to be erroneous. The court next told the jury that Hill claimed "the defendant was guilty of constructive fraud [under § 4b(A)] by breaching a fiduciary duty to him." R. VI, 969. A fiduciary relationship between the plaintiff and the defendant existed, the court said, "if the plaintiff reposed his trust and confidence in Wright." *Id.* The court then added:

"For purposes of this federal statutory claim, a commodity futures commission merchant, such as the defendant corporation, *undertakes a fiduciary relationship to its customers when it solicits or accepts their orders*, handles their funds or furnishes them trading advice, thus placing itself in a position of trust in relation to its customers. If you find that the defendant, through Wright, un-

dertook such activities on behalf of the plaintiff, you may find that the defendant corporation occupied a fiduciary relationship to the plaintiff."

R. VI, 969–70 (emphasis added).

Section 4b makes no mention of fiduciary duties. Some agency and court decisions have read fiduciary duty rules into § 4b in an attempt to fully implement the antifraud provisions of that section. *See Monette v. Premex, Inc.*, Comm.Fut.L.Rep. (CCH) ¶ 21,733, at 26,882 (CFTC April 15, 1983). But this fundamentally misconstrues the purpose of fiduciary duty rules and directly contravenes the express language of § 4b.

▮▮▮▮ The purpose of fiduciary duty rules is to eliminate the need for a fraud inquiry. A trustee, for example, has a fiduciary duty of loyalty that absolutely forbids self-dealing. *Restatement (Second) of Trusts* § 170 (1959). Because of this duty, a beneficiary who proves that a trustee engaged in self-dealing does not have to show fraud. To say § 4b requires a fiduciary duty analysis is to say that § 4b is *not* a fraud provision, and that it creates per se liability rules that do not look to intent or damages. In Part I we reaffirmed our conclusion that § 4b is a fraud provision, expressly requiring willfulness for its violation. The issue under § 4b was whether Wright willfully made unauthorized or excessive trades. The instruction on fiduciary duty under the CEA was inappropriate and only confused that issue.

On retrial the district court should not refer to fiduciary duty in instructing the jury on Hill's § 4b claim.

### B

We do not foreclose liability on the state law breach of fiduciary duty claim. The district court's original instruction on that claim—on which the jury awarded $2,000,000 punitive damages—was too broad, however.

The court said:

"In order for the plaintiff to recover from the defendant on his state law breach of fiduciary duty claim, you must find that all of the following elements have been proved by a preponderance of the evidence: (1) That the plaintiff reposed his trust and confidence in Wright, or plaintiff's trust and confidence was induced from him by Wright, and thus a fiduciary relationship existed; (2) That Wright breached his fiduciary duty by failing to deal with the plaintiff in utmost good faith and solely for the plaintiff's benefit in the handling of his commodity futures account; (3) That the plaintiff incurred losses; and (4) That the plaintiff's losses were caused by Wright's breach of duty."

R. VI, 975–76.

Any state law fiduciary duty of Bache and Wright arose from their agency relationship with Hill. Wright, on behalf of Bache, was Hill's agent at least for the purpose of conducting trades Hill ordered. Wright therefore was a fiduciary, because all agents are fiduciaries "with respect to matters within the scope of [their] agency." *Restatement (Second) of Agency* § 13 (1958). But the district court instruction failed to address the key question, i.e., what was *the scope* of the agency? *See Sherman v. Sokoloff,* 570 F.Supp. 1266, 1269 n. 10 (S.D.N.Y.1983) (noting importance of scope question when stockbroker charged with willful or reckless breach of duty tantamount to fraud); *see also Restatement (Second) of Trusts* § 2, comment b (1959) ("A person in a fiduciary relation to another is under a duty to act for the benefit of the other *as to matters within the scope of the relation.*") (emphasis added). An agency relationship is consensual on both sides. *Restatement (Second) of Agency* § 1. A fiduciary duty thus cannot be defined by asking the jury to determine simply whether the principal reposed "trust and confidence" in the agent. The jury should have been instructed to decide first what Wright had agreed to do for Hill and then to determine whether Wright executed those tasks properly.

Wright and Bache have argued that Hill's account was nondiscretionary and that Wright's duties were confined to executing orders. If this was correct the fiduciary duty owed Hill insofar as trading was concerned would be very narrow—primarily not to make unauthorized trades. *See generally Limbaugh v. Merrill Lynch, Pierce, Fenner & Smith,* 732 F.2d 859, 862 (11th Cir.1984); *Shearson Hayden Stone, Inc. v. Leach,* 583 F.2d 367, 371–72 (7th Cir.1978)[9]; *Fey v. Walston & Co., Inc.,* 493 F.2d 1036, 1049 (7th Cir.1974). There is some evidence that Wright's actions, with Hill's acquiescence, converted the account into a discretionary one. *See Hecht v. Harris, Upham & Co.,* 283 F.Supp. 417, 433 (N.D.Cal.1968) ("control" necessary for finding of churning "need not amount to a formal vesting of discretion"). If this was the case, Wright had at least a fiduciary duty under state law to avoid excessive trading.

At trial and on appeal Hill argued that Wright failed to consider Hill's lack of sophistication, to fully discuss with Hill the risks and mechanics of commodities trading, and to fully evaluate the trades he either made for Hill or advised Hill to make. These allegations are tenuous candidates to support additional breaches of fiduciary duty. Regarding the risks and mechanics of trading, the courts generally are reluctant to find that there have been misrepresentations when a prospective customer has received disclosure documents. *See* Markham, 37 Vand.L.Rev. at 1314–16 (1984) (citing cases). Regarding trading advice, brokers cannot be liable for

---

**9.** *Leach* states that the plaintiff had "a 'nonsupervised' or '*discretionary*' account...." 583 F.2d at 371–72 (emphasis added). We believe that the court intended to say "nonsupervised or *non* discretionary." The account that the court in *Leach* actually described and labeled was one in which the plaintiff "made all the investment decisions." *Id.* at 372. Such an account is called a "nonsupervised" or "nondiscretionary" account. *See, e.g., Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 337 F.Supp. 107, 111 (N.D.Ala.1971) (referring to a "discretionary" account as one in which broker is *not* limited to express orders of client).

honest opinions that turn out to be wrong. Otherwise brokers would refuse to take discretionary accounts and would refuse to advise on nondiscretionary accounts. *See Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 337 F.Supp. 107, 113 (N.D. Ala.1971). We are unwilling to cripple the markets in the name of absolute protection for speculators. Also, the inquiry into allegations of trading impropriety should not be unduly influenced by losses that have been incurred.

On retrial the district court should instruct the jury that fiduciary duty in the context of a brokerage relationship is only an added degree of responsibility to carry out pre-existing, agreed-upon tasks properly. Each task that Bache and Wright agreed to undertake must be established clearly before it can be determined whether fiduciary duties existed and if they were breached. Thus, the jury must determine whether Hill controlled the trading in the account or Bache did; it also must determine whether Bache and Wright undertook an advisory role to instruct Hill on trading mechanics or actual trades to make. It may then consider Bache's and Wright's fiduciary duty to carry out these responsibilities with loyalty and due care. The jury should not, under the evocative phrase "fiduciary duty," be given carte blanche to decide any and all perceived transgressions, regardless of the law.

## III

We also hold that the district court should have admitted some evidence of subsequent trading Hill undertook with another commodity futures broker shortly after Bache liquidated his account.

Bache offered the evidence to help show Hill's sophistication as an investor, his general trading habits and practices, his lack of credibility as to damages suffered, his control of his account with Bache, and the suitability of the type of trading done in the account. The district court excluded the evidence of subsequent trading, because the transactions occurred after the disputed trading and the court believed they were not probative of Hill's "state of mind" during the period in question. Even if the evidence was relevant, the court thought the delay and confusion caused by its presentation would outweigh its probity.[10]

We recognize that a trial court has broad discretion to determine whether evidence is relevant, and its decision will not be reversed on appeal absent a showing of clear abuse of that discretion. *Beacham v. Lee-Norse,* 714 F.2d 1010, 1014 (10th Cir.1983). The same standard of review applies to a trial court's determination, under Fed.R.Evid. 403, that the probative value of the evidence is outweighed by its potential to prejudice or confuse the jury, or to lead to undue delay. *Id.* Nevertheless, a district court's decision need not be

---

10. The court stated:

"[T]he question is the transactions with the Defendant and not with some other organization. I just can't see that there is anything of any substantial probative value to be gained by going into separate incidents and separate contracts and separate transactions later with somebody else.

If they predated the ones in this case, then they would have some bearing, it seems to me, on his state of knowledge or experience or sophistication in this field. But I can't see that they have any bearing on the state of his mind before they ever occurred. So even if they were relevant, under section 403, it would seem to me that they would require that we try the merits and demerits of all those transactions with a different company, and I don't see how a jury is going to be able to keep transactions with the two companies sorted out, after what you have predicted to be a five-day trial. I think it would tend to confuse the jury. It certainly would delay the trial of this case and waste an inordinate amount of time for any probative value it could possibly have to show the state of his sophistication at a date earlier, even if it's only five months earlier.

So even if it were relevant, under Rule 403, I will rule it is inadmissible."

R. II, 391–92.

At another point, the district court stated that it was "going to try one lawsuit at a time," that the later trading "was not the subject of this lawsuit," and that "[t]here is one defendant in this lawsuit only, and that's the one on trial." R. II, 374–75.

outlandish or malicious to rise to the status of clear abuse. Rather, the reviewing court need only be firmly convinced that a mistake has been made.

■ We see the subsequent trading evidence differently than the district court did. We believe the evidence of Hill's later trading was highly relevant to his earlier trading intentions and practices. The later trading began only five months after Hill closed his account with Bache. Apparently the new account, like the account with Bache, was opened at Hill's instigation; it lasted for a similar short period of time, exhibited a similar type and frequency of trading, followed a similar pattern of phone calls, and resulted in a similar loss (this time, $35,000). Because the second account was handled so similarly and so closely in time, this evidence suggested that Hill was not a completely unsophisticated trader while he was trading with Bache. It seems very probative on the issues of whether Hill authorized his trading with Bache, whether Bache took on special duties and breached them, and whether Hill's losses at Bache resulted solely from his own inaccurate market judgments.

The potential impact of this evidence is enhanced because without it the jury heard primarily unsupported allegations from both sides and "battle of the experts" testimony in which technical niceties such as "commission-to-equity ratios" were disputed. That Hill almost immediately undertook new trading strikingly similar but in a wholly new setting quite possibly was the most probative evidence available to Bache.

We therefore disagree with the district court's apparent initial view that this evidence was irrelevant. Evidence is relevant if it has *"any* tendency to make the existence of *any* fact that is of consequence to the determination of the action *more probable or less probable* than it would be

without the evidence." Fed.R.Evid. 401 (emphasis added).[11]

The district court's apparent alternative ruling—that the evidence's probative value, if any, was outweighed by its potential to confuse the jury and lead to undue delay—is more difficult. Certainly there was some potential for confusion and delay if this evidence were presented. As noted, both Hill and Bache analyzed Hill's account at trial through comparisons of individual trades and telephone conversations, the amount of outstanding margin requirements on particular days of trading, and the commission-to-equity ratios generated by the account. If the same extensive analysis were presented for the later trading, we agree that it could result in confusion and delay. *Cf. Moe v. Avions Marcel Dassault-Breguet Aviation,* 727 F.2d 917, 935 (10th Cir.) (upholding trial court decision to exclude evidence of other incidents in complex plane crash case), *cert. denied,* —— U.S. ——, 105 S.Ct. 176, 83 L.Ed. 110 (1984).

■ Yet the district court must balance these detriments against the contested evidence's probative value. *See* Fed.R. Evid. 403. Relevant evidence must be *"substantially* outweighed" by the danger of confusion or delay to justify exclusion. *Id.* (emphasis added); *see* E. Cleary, *McCormick on Evidence* § 185, at 547 n. 37 (3d ed. 1984). Delay alone is no bar to admission; it also must be "undue." Fed. R.Evid. 403. Further, the district court retained the power to require a less elaborate presentation of the later trading evidence, which would avoid or minimize these problems. The evidence could have been limited to summary form or expert testimony on observed similarities. The detail of each transaction would not be necessary to make the point.

■ Given the high probative value of the evidence of Hill's later trading and the

11. Evidence of later acts as proof of prior contested matters is admissible for some purposes. *See, e.g., Eaves v. Penn,* 587 F.2d 453, 464 (10th Cir.1978) (suit in which defendant was alleged to have breached fiduciary duty to profit-sharing plan; evidence of post-purchase events admissible to show intention at time of purchase).

low and controllable danger of confusion and delay, we must hold that the district court abused its discretion when it excluded all evidence of the later trading on this alternative basis.

## IV

■ On retrial we do not foreclose a possible award of punitive damages. We hold that under current Colorado law the district court had subject matter jurisdiction to award punitive damages to Hill.

Relying on the Colorado Supreme Court's holding in *Kaitz v. District Court, Second Judicial District,* 650 P.2d 553 (Colo.1982), Bache argues that punitive damages are not recoverable in equity. In *Kaitz* the Colorado court dismissed a punitive damages claim brought by beneficiaries of guardianship estates against their guardian. The court followed the general rule that an action brought by a beneficiary against a trustee is equitable in nature, and held that punitive damages are unavailable in equity. *Id.* at 555–56.

The Colorado Supreme Court recently granted certiorari in a case involving a stockbroker's alleged breach of fiduciary duty. *Paine, Webber, Jackson & Curtis, Inc. v. Adams,* No. 84SC58 (Colo. Aug. 7, 1984). The case was argued in the Supreme Court October 21, 1985, but the court has issued no opinion as yet. The court said it would consider whether a claim for breach of fiduciary duty was equitable, and therefore whether the trial court lacked subject matter jurisdiction to award punitive damages. *Id.* The Colorado Court of Appeals in the underlying decision, *Adams v. Paine, Webber, Jackson & Curtis,* 686 P.2d 797, 802 (Colo.Ct.App. 1983), affirmed a judgment awarding punitive damages against a stockbroker for breach of a fiduciary duty.

Until the Colorado Supreme Court definitively states that punitive damages are unavailable to a customer suing a securities or commodities broker, we will follow the decision of the state's next highest court to allow such claims. *Id.; see also Holter v. Moore and Co.,* 681 P.2d 962, 966 (Colo.Ct.

App.1983) (fiduciary obligations are equitable in nature, but remedies of principals against agents who breach fiduciary obligations generally are at law). If the Colorado Supreme Court decides *Adams* or otherwise establishes a definitive rule on this subject, its decision will control, of course, on the retrial of the instant case.

## V

Finally we hold that the record evidence did not require the jury to find that Hill ratified any trading irregularities in his account.

■ Ratification is a defense to a principal's claim that the agent performed unauthorized acts. *See Restatement (Second) of Agency* § 82 (1958). It is settled law that "[f]ull knowledge of the unauthorized act, and of all material matters related to it, is an essential of a valid ratification." *Master Commodities, Inc. v. Texas Cattle Management,* 586 F.2d 1352, 1359–60 (10th Cir.1978) (quoting *American National Bank of Sapulpa v. Bartlett,* 40 F.2d 21, 23 (10th Cir.1930)). Hill asserts that he did not know he had a right to have unauthorized or excessive trades backed out of his account, and therefore could not be said to have ratified them. There is some evidence in the record to support this claim. The district court properly instructed the jury on ratification.

The leading case on ratification of allegedly improper commodities trading is *Sherwood v. Madda Trading Co.,* Comm.Fut.L. Rep. (CCH) ¶ 20,728, at 23,014 (CFTC Jan. 5, 1979). *Sherwood* established that a disclosure statement telling a customer of his right to complain would have presumptive force and that even a "meager" disclosure could be adequate to trigger the customer's duty to notify the broker of discrepancies. *Id.* at 23,018–20 & n. 14. *Sherwood* further established that a customer need not complain immediately to dispel claims of ratification, provided there was at least an implicit agreement between the broker and customer to await further market action in the hope of curing contested losses. "Un-

reasonable delay" in protesting, however, would leave the factfinder "free to conclude, in conjunction with other circumstances, that the customer did actually intend by his silence to adopt" the unauthorized trades. *Id.* at 23,020 n. 20; *see* Markham, 37 Vand.L.Rev. at 1326–29.

In this case, the *Bache* disclosure to Hill was fairly explicit, including a provision in the customer agreement Hill signed that all statements of his account would be conclusive if not objected to in writing. And Hill's receipt of confirmation slips and monthly statements is uncontested. The evidence supporting Hill's argument that he did not ratify presses the outer limits of the law. But we cannot say the factfinder's determination that he did not ratify was wrong as a matter of law.

REVERSED and REMANDED for further proceedings consistent herewith.

HOLLOWAY, Chief Judge, concurring in part and dissenting in part:

I concur in the disposition in the majority opinion and in all parts of the opinion except Part III which holds that the trial court erred in excluding the evidence of subsequent trading by plaintiff-appellant Hill. I must respectfully dissent from that part of the opinion.

The trial judge heard the offers of proof and concluded that the testimony was of doubtful relevance as to Hill's knowledge, sophistication or experience some five months earlier, and that even if relevant, the evidence would confuse the jury and "waste an inordinate amount of time for any probative value it could possibly have ..." (App. 319). It is true that under Fed. R.Evid. 403, the probative value of relevant evidence must be substantially outweighed by the danger of confusion or undue delay, or other named factors, to justify exclusion. Considering the evidence offered with its claimed probative value, and the persuasive countervailing factors cited by the trial judge, I am unable to agree that the judge abused his discretion in the ruling made. *See Moe v. Avions Marcel Dassault-Brequet Aviation,* 727 F.2d 917, 935

(10th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 176, 83 L.Ed.2d 110 (1984). Since the case is going back for a retrial the issue should be considered, but I would uphold the trial court's exclusion of the evidence.