Patrick A. **RUPERT**, Plaintiff-Appellee,

v.

**CLAYTON BROKERAGE COMPANY OF ST. LOUIS, INC., a Missouri corporation, Defendant-Appellant.**

No. 83CA0576.

Colorado Court of Appeals,
Div. I.

March 7, 1985.

Rehearings Denied April 4, 1985.

Certiorari Granted Sept. 23, 1985.

against Clayton Brokerage and Forward on issues pertaining only to the account with Clayton Brokerage.

Rupert's complaint consisted of separate claims for alleged breach of fiduciary duty, negligence and negligent supervision, outrageous conduct, excessive trading (churning), and deceit based on fraudulent representations. Clayton Brokerage denied liability on several grounds and also asserted the defenses of knowledge of risk, comparative negligence, and release.

The trial court found that Rupert had opened a discretionary commodity trading account with Clayton Brokerage with a balance slightly in excess of $13,000, and had signed a risk disclosure statement in which he indicated that he understood that the risk of loss in trading commodities futures could be substantial. At that time, Hunt indicated to Rupert that he could make a lot of money or lose his investment.

Keene, Munsinger & Stuckey, Sharon A. Sievers, Stephen M. Munsinger, Denver, for plaintiff-appellee.

Kelly, Haglund, Garnsey & Kahn, Edwin S. Kahn, Denver, for defendant-appellant.

VAN CISE, Judge.

In this action, following a non-jury trial, the court held that defendant, Clayton Brokerage Company of St. Louis, Inc. (Clayton Brokerage), a securities broker, breached its fiduciary duty towards its customer, plaintiff, Patrick A. Rupert. The court then entered judgment in favor of Rupert in the amount of his net trading losses less a release setoff. Clayton Brokerage appeals. We reverse.

Rupert originally sued not only Clayton Brokerage but also another broker, with whom he had had an earlier account, and three salesmen, Robert Hunt, David M. Forward, and Gary McAdam, for his losses in both trading accounts. Prior to trial, he released Hunt, settled with McAdam for $750, and settled with the other broker for $5,300 (the amount of his trading losses in that account). The case went to trial

In accepting the discretionary account, Clayton Brokerage did not follow its own internal rules in that: (1) the opening balance was below the required $15,000 minimum for new accounts; (2) none of the three account executives (Hunt, Forward, and McAdam) handling the discretionary account had had the minimum three years experience in commodity trading or two years with this broker; (3) there was no attempt made to determine Rupert's source of income, investment experience, or amount of risk capital; (4) additions were made to forms after Rupert had signed them in order to qualify him as an investor. Also, when the equity balance in Rupert's account dropped below $7,500, Clayton Brokerage did not follow its own rule which required that Rupert be advised that he had three options—to liquidate the account, to deposit more money, or to revoke the discretionary status of the account.

Based on the above findings, the court held that the internal rules were an indication of what the standard of care should be in dealing with other people's money. It concluded that Clayton Brokerage was negligent in not complying with its internal

rules, but the violations were "not reckless or wanton." It stated:

> "No one of these violations was solely responsible but the totality of everything that was done indicates to the court that [Clayton Brokerage] did not exercise the care necessary, and that [it] breached the fiduciary duty [it] owed [Rupert], and that breach resulted in damage to [him]."

The court then determined that the amount of Rupert's damages resulting from Clayton Brokerage's breach of fiduciary duty consisted of the amount of his net losses while his account was with Clayton Brokerage, $11,881, less a set-off of $750 for the McAdam settlement amount paid, plus interest and costs. Judgment was entered accordingly.

The court held that only the claim for breach of fiduciary duty had been proved; all other claims were dismissed. Also, the court held that the case against Forward was not proven, and the action was dismissed as to him. Only the judgment for damages for breach of fiduciary duty has been appealed.

## I.

■ Clayton Brokerage first contends that, in finding liability for breach of fiduciary duty, the trial court created a standard of care which is inconsistent with the standard imposed by Congress in the Commodity Exchange Act, 7 U.S.C. § 1, et seq. (the Act). It argues that unless a customer proves a violation of the antifraud provisions set forth in § 4b of the Act, recovery of damages against the broker is not an available remedy and, since fraud was not proved, Rupert's action must fail. We do not agree.

The language of 7 U.S.C. § 6b does not in any way relate to a tort standard of care; instead, it sets forth conduct which constitutes a crime. Furthermore, although the Act may accord the Commodities Futures Trading Commission (the Commission) exclusive *regulatory* authority in the commodities trading industry and may preempt state regulation, this does not mean that a customer's civil action against

a broker on a state common law tort claim is preempted. *See Patry v. Rosenthal & Co.*, 534 F.Supp. 545 (D.Kansas, 1982). In fact, although 7 U.S.C. § 2 grants the Commission "exclusive jurisdiction with respect to ... transactions involving contracts of sale of a commodity for future delivery, traded or executed on ... any ... board of trade, exchange, or market ...," that section of the Act also provides that: "Nothing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State." *See Jones v. B.C. Christopher & Co.*, 466 F.Supp. 213 (D.Kansas 1979).

We therefore conclude that the common law claim for breach of fiduciary duty raised by Rupert in this action is not preempted by the Act.

## II.

■ Contrary to its contentions, the release of Hunt and McAdam and the finding of no liability as to Forward do not absolve Clayton Brokerage. Clayton Brokerage's liability was based on its own conduct and not on respondeat superior. And, under § 13–50.5–105(1), C.R.S. (1984 Cum.Supp.), the release of one or more tortfeasors does not release the others. The $750 required setoff was allowed.

## III.

■ Clayton Brokerage next contends that non-compliance with its house rules does not *ipso facto* make the broker an insurer against all trading losses incurred by a customer. It argues that, unless the losses resulted from or were caused by the violation of these rules, it should not have been held liable. We agree. It further asserts that there was no evidence to support the trial court's finding and conclusion that Rupert's losses resulted from Clayton Brokerage's failure to follow the internal rules set forth above. We agree, at least in part.

■ When it accepted the discretionary account, as to which prior authorization was not needed for each transaction, Clay-

ton Brokerage became a fiduciary for its customer, Rupert, as a matter of law. *Leib v. Merrill Lynch, Pierce, Fenner and Smith*, 461 F.Supp. 951 (E.D.Mich.1978). Cf. *Adams v. Paine, Webber, Jackson & Curtis, Inc.*, 686 P.2d 797 (Colo.App.1983).

■ However, until the account was accepted, there was no relationship whatsoever between the parties, and Clayton Brokerage owed no duty to Rupert. The fiduciary duty commenced after the account was opened and not before. Therefore, Clayton Brokerage's decision to accept the account in violation of its own rules did not breach any duty.

■ The trades, although some were profitable, ultimately resulted in losses; but that fact, standing alone, does not establish that the losses were the fault of the broker/fiduciary. A fiduciary is not an insurer against any and all losses. *Security Trust Co. v. Appleton*, 303 Ky. 328, 197 S.W.2d 70 (1946). It is liable only for losses caused by or the result of its own conduct. *See Cash v. Minnequa Bank*, 162 Colo. 236, 426 P.2d 767 (1967).

■ The record does not disclose any improper conduct by Clayton Brokerage or by any of its representatives in the handling of the account after it was opened, at least until the equity balance therein dropped below $7,500. Rupert made no claim or showing that any of the transactions, viewed by the facts and conditions existing at the time they were entered into, *see Heller v. First National Bank*, 657 P.2d 992 (Colo.App.1982), showed bad judgment or were imprudent. There was no indication that any market or exchange rule or any security law had been violated. It was also undisputed that the account executives kept close contact with Rupert, and he promptly received confirmations of every transaction and also monthly statements showing his then account balance Cf. *Adams v. Paine, Weber, Jackson & Curtis, Inc., supra*. Nor was there any proof of churning or fraudulent mishandling.

There being no showing of improper conduct causing the initial losses, there is no basis for holding Clayton Brokerage liable. Therefore, the principal amount of the judgment (before setoff) must be reduced by the amount of the losses which occurred before the equity balance in the account fell to $7500.

However, from conflicting evidence, the court found that, when the equity value of Rupert's trading account fell below $7,500, Clayton Brokerage, in violation of its internal rule, did not advise Rupert that he had the options of liquidating, depositing additional money, or revoking the discretionary nature of the account. There was further trading after this threshold had been reached, and additional losses were incurred. If the account did continue to have discretionary status, then there would exist a causal connection between the conduct of Clayton Brokerage and the subsequent losses.

However, Clayton Brokerage contends the evidence shows (1) that, at or near the time the balance fell below $7,500, Rupert instructed Hunt to terminate the discretionary status of this account and that this was done, and (2) that thereafter all trading decisions were made or approved by Rupert. If that is so, then Clayton Brokerage is not liable for any of the losses incurred after the nature of the account was changed.

The trial court made no findings as to when, if ever, the account was changed to a non-discretionary account or, if it was changed, how much of the losses occurred after the change was made, and how much occurred on transactions based on trading decisions made or approved by Rupert. On remand, those findings should be made from the existing record, and an appropriate judgment should be entered based thereon.

Rupert argues that, if all of the house rules had been complied with, the account would not have been opened and there would have been no losses; therefore, the broker is liable for all losses. That is not

the law, and we decline to adopt such a principle.

## IV.

In view of our holding in III above, we need not address the other issues raised by Clayton Brokerage.

The judgment is reversed, and the cause is remanded for further proceedings as indicated in this opinion.

PIERCE, J., concurs.

TURSI, J., concurs in part and dissents in part.

TURSI, Judge, concurring in part and dissenting in part.

I concur in Parts I and II of the majority opinion. I dissent to that portion of part III which imposes upon a party who has established a breach of fiduciary duty resulting in a loss, the additional burden of proving that the loss was caused by negligence subsequent to the established breach.

The claim upon which the trial court rendered judgment was Clayton Brokerage's breach of its fiduciary duty to Rupert by placing him in a high risk discretionary commodity futures trading account. Under the record before us, there is no dispute as to the fiduciary relationship established between Rupert and Clayton Brokerage concerning his account which was transferred to it by salesmen in whom he had reposed trust and confidence. *See Adams v. Paine, Webber, Jackson & Curtis, Inc.,* 686 P.2d 797 (Colo.App.1983).

Based upon this record, the trial court found that Clayton Brokerage breached its duty to Rupert by opening the high risk discretionary commodity futures account. And thus, the trial court properly found Clayton Brokerage to be obligated to reimburse Rupert for the loss he would not have suffered *but for* the breach in opening the account. There is sufficient evidence in the record to support the trial court's holding on this issue and we are bound thereby.

When a fiduciary commits a breach of duty, whether that breach be intentional or negligent, the beneficiary of that fiduciary obligation has the right to recover any loss flowing from that breach. *See* Restatement (Second) of Trusts § 205 (1959); A. Scott, *Trusts* § 205 (3rd ed.1967); G. Bogert, *Trusts & Trustees* § 862 (Rev.2d ed. 1982); Restatement (Second) of Agency § 404(a) (1958). *See also White v. Brock,* 41 Colo.App. 156, 584 P.2d 1224 (1978).

Since relief was granted upon Rupert's claim that Clayton Brokerage breached its fiduciary duty by placing him in a high risk discretionary commodity account, whether Clayton Brokerage aggravated the loss by negligent management of the discretionary account is irrelevant to his rights to be made whole for the loss suffered because of the breach. This remedy has been called the "out-of-pocket" recovery. *See Twomey v. Mitchum, Jones & Templeton, Inc.,* 262 Cal.App.2d 690, 69 Cal.Rptr. 222 (1968).

However, I do agree with Clayton Brokerage's contention that the trial court erred in its computation of loss. Here, the recovery must be limited to the loss flowing from the breach of fiduciary duty. The evidence appears to be undisputed that at the time Rupert was informed that he could terminate his discretionary account there had been a loss of $7,277, leaving a balance of $4,445. Rupert at that time chose to have the money transferred to a standard account under the guidance of Hunt. No breach of fiduciary relationship by Clayton Brokerage has been urged regarding the latter account.

Therefore, I would remand to the trial court with directions that Rupert's recovery should be based upon the amount originally deposited in the discretionary account minus the amount transferred to the standard account and minus the settlement of $750 contributed by McAdam.