24CA1889 Allen v Concord Energy 02-12-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1889
City and County of Denver District Court No. 21CV32298
Honorable Jill D. Dorancy, Judge

J. Christian Allen,

Plaintiff-Appellant and Cross-Appellee,

v.

Concord Energy Holdings, LLC, a Colorado Limited Liability Company, and
Concord Energy, LLC, a Colorado Limited Liability Company,

Defendants-Appellees and Cross-Appellants.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE BERGER*
J. Jones and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 12, 2026

Womble Bond Dickinson (US), LLP, Kendra N. Beckwith, Nathan B. Thoreson,
Denver, Colorado; Otteson Shapiro, LLP, Kevin T. Schutte, William P. Dunne
III, Dallas, Texas, for Plaintiff-Appellant and Cross-Appellee

Malik Semmens, LLC, Damon M. Semmens, Denver, Colorado; Hunton
Andrews Kurth, LLP, Christopher M. Pardo, Boston, Massachusetts; Hunton
Andrews Kurth, LLP, Katherine P. Sandberg, Washington, D.C.; Hunton
Andrews Kurth, LLP, Trevor S. Cox, Richmond, Virginia, for Defendants-
Appellees and Cross-Appellants

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     In this civil action for unpaid wages or compensation under the Colorado Wage Claim Act (CWCA), the jury awarded substantial damages to plaintiff, J. Christian Allen.  Acting on Allen's C.R.C.P. 59 motion, the district court attempted to supplement that jury award with penalties, interest, and attorney fees authorized by the CWCA.  But the court ruled too late on that motion because it had already been denied by operation of law.  Allen appeals the resulting judgment.

¶ 2     Defendants, Concord Energy Holdings, LLC and Concord Energy, LLC (jointly, Concord), cross-appeal, claiming that Allen's breach of fiduciary duty results in a complete forfeiture of his compensation.

¶ 3     We affirm the judgment based on the jury's verdict, reverse the denial of Allen's C.R.C.P. 59 motion, and remand for further proceedings.

## I.     Facts and Procedural History

¶ 4     Concord, an energy commodities marketing, logistics, and trading company, hired Allen as Director of East Trading.  Allen's employment agreement provided that he would earn a yearly salary of $150,000 plus a bonus "[b]ased on [the] overall performance of

1

the East Book of business," equal to "[fifty percent] of the East Book incentive pool, calculated as [twenty percent] of realized gross margin net of a desk fee," payable quarterly in cash.

¶ 5        Because of unprecedented levels of market volatility in February 2021, Allen sold on Concord's behalf approximately $38 million of natural gas to Brazos Electric Power Cooperative (Brazos). Concord's profit margin for the sale was very high.  But, in selling the gas to Brazos, Allen exceeded the pre-existing $250,000 credit limit that Concord had set for transactions with Brazos.  Concord presented undisputed evidence that the purpose of the credit limits was to limit Concord's exposure on the trades.

¶ 6        Brazos failed to pay Concord the money owed on the contract and filed for bankruptcy.  Concord was a creditor of Brazos and sold its bankruptcy claim to a third party for approximately $4 million less than it would have received had Brazos honored its contract.  Because of the high profit margin on the sales, Concord still realized a large profit.

¶ 7        Concord refused to compensate Allen for the Brazos trades, and, in May 2021, Allen was terminated following Concord's

determination that he lied about obtaining credit approval for the Brazos trades.[1]

¶ 8       In July 2021, Allen sued Concord for breach of the employment agreement and violation of section 8-4-109, C.R.S. 2025, of the CWCA.  Allen sought his unpaid wages, statutory penalties, and attorney fees and costs.  Concord counterclaimed for breach of fiduciary duty, breach of the duty of loyalty, negligence, and fraud or false representation.

¶ 9       After a lengthy trial, a jury returned a verdict in Allen's favor on his breach of contract and CWCA claims, found that Concord's failure to pay was willful, and awarded him $3.36 million — the amount of the bonus on the Brazos trades.  The jury also found that Allen breached his fiduciary duty but that he proved his affirmative defenses of waiver and ratification.

¶ 10      Both parties timely filed post-trial motions under C.R.C.P. 59. Concord argued that given the jury's finding that Allen had breached his fiduciary duty to Concord, the court was required to

---

[1] Allen's co-trader on the East Book, Peter Rebstock, was disciplined for violating the Brazos credit limit, but Allen was ultimately terminated.

render an "equitable" determination under the "faithless servant doctrine" that Allen forfeited his right to the compensation claimed.

¶ 11 By timely written order, the district court denied Concord's motion, concluding that the faithless servant doctrine was inapplicable to the facts of the case based on the jury's ratification and waiver verdicts.

¶ 12 Allen moved to amend the judgment to award him statutory penalties for Concord's willful withholding of wages under the CWCA, pre- and post-judgment interest, and attorney fees and costs. The district court granted in part and denied in part the motion on September 20, 2024, nine days after the deadline for ruling on C.R.C.P. 59 motions had expired.[2] Three days later, in an amended order, the district court awarded Allen $6,832,157.68, including $2,527,068.75 in penalties under the 2022 version of the CWCA and $940,663.93 in prejudgment interest. The court stated

---

[2] Allen filed his motion to amend the judgment on July 10, 2024. C.R.C.P. 59(j) provides that a court "shall determine any post-trial motion within 63 days (9 weeks) of the date of the filing of the motion," which, in this case, was September 11, 2024. If the court fails to rule on the motion within 63 days, it is "deemed denied for all purposes." C.R.C.P. 59(j).

that it would address Allen's attorney fees request in a separate order.

¶ 13     On appeal, Allen argues that the court erred by denying (by operation of law) his C.R.C.P. 59 motion.  He also contends that he is entitled to the statutory penalties prescribed by the 2023 version of the CWCA and that he is further entitled to pre- and post-judgment interest and attorney fees.

¶ 14     Concord cross-appeals, arguing that the judgment must be reversed in its entirety because Allen forfeited all claimed compensation.  Additionally, Concord argues that the district court reversibly erred by excluding evidence showing that Allen failed to obtain credit approval prior to making the Brazos trades.

¶ 15     We first address Concord's challenges to the judgment and then address Allen's contentions.

## II.     Automatic Forfeiture of Allen's Compensation

¶ 16     Concord contends that allowing Allen to recover compensation in this case is inconsistent with the Colorado Supreme Court's decisions in *Jet Courier Service, Inc. v. Mulei*, 771 P.2d 486 (Colo. 1989), and *Moore & Co. v. T-A-L-L, Inc.*, 792 P.2d 794 (Colo. 1990) — cases that Concord argues address the faithless servant doctrine

5

and stand for the proposition that an employee completely forfeits compensation while in breach of his fiduciary duty to his employer. Concord argues that, because the jury found that Allen breached his fiduciary duty, he is entitled to no compensation and therefore the judgment entered by the district court must be reversed.

## A.    Standard of Review

¶ 17    Our review of a jury's verdict is highly deferential. *Palmer v. Diaz*, 214 P.3d 546, 550 (Colo. App. 2009). It is the sole prerogative of the jury to resolve disputes of fact and to determine the weight of the evidence, the inferences to be drawn from it, and the credibility of the witnesses. *Fisher v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 57, ¶ 40, *aff'd*, 2018 CO 39. Accordingly, we won't disturb a jury's verdict if there is competent evidence in the record to support it, even if reasonable people could reach a different conclusion based on the same facts. *Id.*; *see also People in Interest of S.G.L.*, 214 P.3d 580, 583 (Colo. App. 2009).

¶ 18    We review a trial court's denial of a C.R.C.P. 59 motion for an abuse of discretion. *Gold Hill Dev. Co., L.P. v. TSG Ski & Golf, LLC*, 2015 COA 177, ¶ 52. A trial court's ruling constitutes an abuse of

discretion when it is manifestly arbitrary, unreasonable, or unfair, or is based on a misunderstanding of the law. *Id.* at ¶ 65.

## B.    Applicable Law

### 1.    Breach of Fiduciary Duty

¶ 19    To recover on a claim for breach of fiduciary duty, "a plaintiff must prove: 1) that the defendant was acting as a fiduciary of the plaintiff; 2) that he breached a fiduciary duty to the plaintiff; 3) that the plaintiff incurred damages; and 4) that the defendant's breach of fiduciary duty was a cause of the plaintiff's damages." *Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1022 (Colo. App. 1993).

¶ 20    Ratification may be a defense against a claim of breach of fiduciary duty. *Adams v. Paine, Webber, Jackson & Curtis, Inc.*, 686 P.2d 797, 801 (Colo. App. 1983), *aff'd*, 718 P.2d 508 (Colo. 1986). "Ratification may occur if a principal accepts the benefits resulting from [an agent's] unauthorized act," *Siener v. Zeff*, 194 P.3d 467, 472 (Colo. App. 2008), and "thereby become[s] obligated to the same extent as [the principal] would have been had [the principal] originally authorized the agent's act," *M.S.P. Indus., Inc. v. Diversified Mortg. Servs., Inc.*, 777 P.2d 237, 238 (Colo. App. 1989). It must be shown that a principal had knowledge of the material

facts before the principal is held to have ratified the agent's acts. *Adams*, 686 P.2d at 801.

¶ 21 Similarly, waiver may be a defense to a breach of fiduciary duty claim under certain circumstances. *Barker v. Jeremiasen*, 676 P.2d 1259, 1262 (Colo. App. 1984). Waiver is the intentional relinquishment of a known right. *Lone Pine Corp. v. City of Fort Lupton*, 653 P.2d 405, 406 (Colo. App. 1982). To establish a waiver, there must be a clear, unequivocal, and decisive act of the party demonstrating the relinquishment. *Barker*, 676 P.2d at 1262.

## 2. *Jet Courier* and *Moore*

¶ 22 The faithless servant doctrine, a concept grounded in the law of agency, generally disentitles an employee from recovering compensation when the employee owes a duty of loyalty to his employer and is faithless in the performance of his services. *See Chelsea Indus., Inc. v. Gaffney*, 449 N.E.2d 320, 326-27 (Mass. 1983); *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003) (applying New York law). While no Colorado cases mention the doctrine by name, Concord argues that *Jet Courier* and *Moore* recognized the doctrine in their discussions of when compensation is forfeited.

¶ 23    In *Jet Courier,* an employee in the air courier business —
frustrated by his employer's failure to pay his bonus — set up a
competing enterprise behind his employer's back and diverted
much of his employer's business to his new venture by poaching
the pilot staff, along with five major bank customers.  771 P.2d at
489-91.  The supreme court held that the employee was not entitled
to his unpaid compensation, stating as a general rule that "an
employee is not entitled to any compensation for services performed
during the period he engaged in activities constituting a breach of
his duty of loyalty even though part of these services may have been
properly performed."  *Id.* at 499-500.  However, a disloyal employee
"could still recover compensation for services properly rendered
during periods in which no . . . breach occurred and for which
compensation is apportioned in his employment agreement."  *Id.* at
500.

¶ 24    In *Moore,* the supreme court considered whether a real estate
broker, operating under an exclusive listing agreement with the
seller, automatically forfeited a real estate commission by breaching
his fiduciary duty when the broker withheld material information
from the seller and disclosed confidential information to another

purchaser. 792 P.2d at 798. The court, relying on section 469 of the Restatement (Second) of Agency (A.L.I. 1958) and *Jet Courier*, held that the broker's breach of fiduciary duty resulted in the broker's forfeiture of the commission regardless of any demonstrable harm to the seller or any evidence of fraud, self-dealing, or secret profit to the broker. *Moore*, 792 P.2d at 800. "To hold otherwise would reward the broker for conduct violative of the broker's basic duty to the seller," the court elaborated. *Id.*

### C. Analysis

¶ 25 In several respects, Concord substantially overreads both *Jet Courier* and *Moore*. *Jet Courier* is a breach of the duty of loyalty case. 771 P.2d at 492-93. A breach of the duty of loyalty occurs when an employee acts for his own benefit to the detriment of the employer. *Id.*

¶ 26 In some, but not all, cases, as pointed out in *Jet Courier*, a breach of the duty of loyalty may also constitute a breach of

fiduciary duty. *Id.* at 492 n.10. But a breach of fiduciary duty is not necessarily a breach of the duty of loyalty.[3]

¶ 27    As in all cases, the facts matter. The conduct alleged in *Jet Courier* was that the employee began competing with Jet Courier Service, Inc. (Jet) while he was still on the company's payroll. *Id.* at 489-90. He allegedly solicited and spirited away not only Jet's customers, but also Jet's employees. *Id.* at 490. His entreaties to Jet's customers and employees effectively decimated Jet's business. *Id.* ("Jet was able to maintain its . . . operations only through a rapid and massive transfer of resources . . . .").

¶ 28    In *Moore*, a real estate broker repeatedly violated his fiduciary duties to his client, leading to a forfeiture of his real estate commission. 792 P.2d at 800.

¶ 29    The conduct alleged in this case is very different. Allen did not compete with Concord. He did not attempt to convince Concord's customers to go elsewhere or encourage its employees to leave their

---

[3] Concord repeatedly uses the term "faithless servant doctrine," which does not appear in *Jet Courier, Moore,* or any other Colorado authority cited to us or of which we are aware. We will therefore use the language contained in our case law instead of the "faithless servant doctrine."

employment and go to work for a new business.  The district court

correctly distinguished this situation from the breach of duty of

loyalty in *Jet Courier* when it granted Allen's motion for directed

verdict on the breach of duty of loyalty claim.  Allen exceeded the

$250,000 credit limit assigned to Brazos, which the jury apparently

found to be a breach of Allen's fiduciary duty to Concord.  But the

jury also explicitly found that Concord ratified Allen's actions and

waived the consequences of that conduct.[4]

¶ 30    Concord argues that the jury's verdicts of waiver and

ratification have no effect on the jury's finding that Allen breached

his fiduciary duty because forfeiture of compensation is automatic

upon a finding of a breach of fiduciary duty.  For multiple reasons,

we disagree.

---

[4] The jury was instructed that the defense of ratification applies if
the jury finds that (1) Concord "had full knowledge of all the
important facts" regarding Allen's actions; and (2) "[b]y words or
conduct, Concord . . . ratified or accepted" Allen's conduct by
accepting the benefits, failing to timely object, or acquiescing to or
approving of Allen's conduct.

The jury was instructed that the defense of waiver was proved if (1)
Concord knew of Allen's breach of fiduciary duty and that the
breach gave Concord the right to seek damages; and (2) Concord
intentionally and voluntarily gave up this right.

¶ 31    First, the record demonstrates that Concord did not preserve this argument. The position that Concord took in the district court is materially different than the argument it makes in this court: that upon the finding of a breach of fiduciary duty, forfeiture of compensation is automatic as a matter of law. An automatic forfeiture of compensation that results as a matter of law is not an "equitable matter," which is how Concord presented the issue in its Rule 59 motion. For these reasons, we could decide this issue on the basis that Concord failed to preserve the claimed error.

¶ 32    Nonetheless, we assume, without deciding, that Concord preserved its arguments as to automatic forfeiture and address and reject Concord's arguments on the merits.

¶ 33    While it is true that *Jet Courier* discussed forfeiture of compensation, neither it nor *Moore* says anything about ratification or waiver. Those doctrines were inapplicable in *Jet Courier* and *Moore* because it would make no sense to say that Jet ratified the same conduct that essentially destroyed its business. *See Jet Courier*, 771 P.2d at 490. And certainly, there was no evidence cited in the *Jet Courier* opinion that arguably could have implicated the doctrine of waiver by the employer. What *Jet Courier* does say is

that, upon a finding of a breach of the duty of loyalty, the fact that the employer may have benefitted by the challenged transactions does not prevent forfeiture of the disloyal employee's compensation. *Id.* at 498.

¶ 34    But that is not the same thing as saying that under no circumstances are the well-established legal doctrines of ratification and waiver inapplicable to a breach of duty of loyalty case, much less all breach of fiduciary duty cases that do not involve the type of disloyalty found in *Jet Courier*.  Proving an affirmative defense means there is no liability even if the elements of the claim are proved; we see no reason to apply a different rule here.

¶ 35    We reject Concord's argument that while the doctrines of ratification and waiver may be pertinent to an affirmative claim of breach of fiduciary duty, they can have no effect when a breach of fiduciary duty is used as a defense to the recovery of compensation.[5]  Concord cites no authority in support of that contention, and we are aware of none.  That position also defies common sense.  We don't understand why waiver and ratification

---

[5] We note that Concord does not challenge the jury's findings as to ratification or waiver in its appeal.

would apply to justify Allen's conduct when he is sued for breach of fiduciary duty but not when he is sued for forfeiture of otherwise earned compensation based on an alleged breach of fiduciary duty.

¶ 36    For these reasons, we conclude that the district court did not err by rejecting Concord's arguments that Allen automatically forfeited his compensation when the jury found he breached his fiduciary duty.

### III.    Exclusion of Video Evidence

¶ 37    Concord next contends that the district court abused its discretion by excluding video evidence showing that Allen did not obtain manager approval prior to completing the Brazos trades.  We conclude that there was no reversible error in this respect.

### A.    Additional Facts

¶ 38    Allen testified that, on February 13, 2021, John Vedra, Concord's risk manager, gave him permission to make trades exceeding Brazos's credit limit by telling him, "You're good.  Go for it."  On re-direct, Allen acknowledged Vedra's deposition testimony that Vedra had been at a birthday party at Topgolf that morning and was not in the office, but Allen maintained that he had completed all Brazos trades by 10:39 a.m. on February 13 based on

15

Vedra's in-office approval. Allen also testified about the cold weather that day, saying that the "low was [minus two] and the high was [two] Fahrenheit," which, according to Allen, undermined Vedra's testimony that he had been at Topgolf early that morning.

¶ 39 On the next trial day, Concord sought to introduce video evidence corroborating Vedra's testimony that he had been at Topgolf the morning of February 13 and therefore did not give approval to Allen to exceed the credit limit. The district court rejected this proposed evidence, stating it was not "critical to any of the issues."

### B. Applicable Law and Standard of Review

¶ 40 Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Evidence that is not relevant is inadmissible. CRE 402. Even relevant evidence may nonetheless be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." CRE 403.

¶ 41    We review a district court's evidentiary rulings for an abuse of discretion. *CORE Elec. Coop. v. Freund Invs., LLC*, 2022 COA 63, ¶ 16. A district court abuses its discretion when its decision is "manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law." *Id.*

¶ 42    We review errors in evidentiary rulings for harmless error, if preserved. *Bernache v. Brown*, 2020 COA 106, ¶ 26. Thus, we will only disturb the district court's decision if an error affected a party's substantial rights. *Id.* "An error affects a substantial right when it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself." *Banek v. Thomas*, 733 P.2d 1171, 1178 (Colo. 1986).

## C.    Analysis

¶ 43    Concord contends that it was deprived of a fair trial when the district court precluded it from introducing video evidence regarding Vedra's non-presence in the office when he allegedly gave in-office approval to Allen to exceed the credit limit. Concord makes a persuasive argument that the video evidence was relevant to the important question of whether Allen actually obtained approval to

exceed Brazos's credit limit. *See* CRE 401; CRE 403. The proffered evidence was directly relevant to whether the risk manager approved the transactions at the time they were made, a matter disputed at trial. *See* CRE 401.

¶ 44    Notwithstanding the relevance of the evidence, we must review the entire record to determine whether the alleged error rejecting the evidence requires reversal. *People v. Gaffney*, 769 P.2d 1081, 1088 (Colo. 1989) ("If a reviewing court can say with fair assurance that, in light of the entire record of the trial, the error did not substantially influence the verdict or impair the fairness of the trial, the error may properly be deemed harmless.").

¶ 45    If the jury had credited Allen's testimony that Vedra approved in advance the transactions that exceeded Brazos's credit limit, it is difficult to understand why the jury found that Allen breached his fiduciary duty. While it is impossible to know exactly why the jury found that Allen breached his fiduciary duty to Concord, the only logical explanation is that the jury *rejected* Allen's testimony that he received advance approval from Vedra. If the jury found that Vedra approved the transactions in advance, there would be no basis to find that Allen breached his fiduciary duty.

¶ 46    The evidence was overwhelming that Allen testified falsely when he said that he had obtained advance approval of the Brazos trades that exceeded the credit limit.  With the exception of Allen, every percipient witness — Rebstock; Vedra; Matthew Flavin (Concord's CEO); John Evenstad (Concord's credit manager); and Jennifer Kotulski (a senior trader on a different Concord book) — testified that Allen never sought or obtained credit approval for the Brazos trades.

¶ 47    Even more compelling was the written record of communications between Concord and Brazos's representatives that constituted and confirmed the trades.  Those communications, recorded by Concord's automatic systems, cast grave doubt on whether there was sufficient time between the initiation of the trade discussions and the confirmation of the trades for anyone to have obtained additional credit approval.

¶ 48    For these reasons, we conclude that the jury rejected Allen's testimony that he obtained advance approval of the Brazos trades and found that Allen breached his fiduciary duty.  That rejection renders harmless any error in the rejection of the video evidence.

¶ 49    Whether or not Vedra approved the transactions before the fact has little, if any, relevance or probative value to whether Concord later ratified Allen's actions or waived the consequences of those actions.

¶ 50    The evidence supporting the jury's waiver and ratification findings was extensive and was *not* dependent on Allen's testimony or credibility.  The following evidence supported the jury's waiver and ratification findings:

- There were multiple Brazos trades over the long holiday weekend.  The trade blotters, which recorded every trade, showed that except for the first Brazos trade, every Brazos trade substantially exceeded Brazos's credit limit, by millions of dollars.  None of these trades were concealed from Concord management by Allen or Rebstock.

- Despite repeated indications that the Brazos credit limit was violated, Concord management did nothing to stop or limit further Brazos trades.  Concord management had every opportunity during the holiday weekend to stop further Brazos trades.

- During the Texas storm that led to the market disruptions, Concord executed many trades, apart from the Brazos trades, that exceeded, in some cases by tens of millions of dollars, the established credit limits for those customers.

- The evidence presented by Concord's management at trial regarding the risk of loss of over-the-limit trades was misleading and incomplete. Concord's cost of the gas it sold to Brazos for $37 million was approximately $850,000. As Evenstad stated in an email he sent to Concord's management, "[W]e spun $850,000 worth of gas into a $34 million profit." Because of the huge upsides of these trades, Concord had every incentive to overlook and ratify the Brazos trades.

¶ 51    For these reasons, we conclude that there is no reasonable probability that the exclusion of the video evidence affected the jury's verdicts. Therefore, any error in excluding the video evidence was harmless. *Banek*, 733 P.2d at 1178.

21

## IV. Statutory Penalties Under the CWCA

¶ 52    Allen contends that the 2023 version of the CWCA, which provides enhanced penalties, is applicable to his claim for statutory penalties, even though he filed his complaint in 2021 and Concord's failure to pay the compensation occurred before the effective date of the amendments to the CWCA. We conclude, like the district court, that the 2022 version of the CWCA prescribes the penalty in this case.

### A. Applicable Law and Standard of Review

¶ 53    Employers in Colorado must immediately pay wages that are "earned, vested, determinable, and unpaid" at the time the employer terminates an employee. § 8-4-109(1)(a). If an employer fails to pay earned wages, the employee "may send a written demand . . . or may file an administrative claim or civil action for the payment." § 8-4-109(3)(a). Once an employee does so, the employer may cure the violation by tendering the unpaid wages within fourteen days. § 8-4-109(3)(a.5). If the employer fails to make payment within fourteen days, the employer must pay a statutory penalty in addition to the unpaid wages. § 8-4-109(3)(b).

22

¶ 54    Section 8-4-109, prior to the 2023 amendment, provided that the penalty is either "the employee's average daily earnings for each day, not to exceed ten days, until such payment . . . is made" or, "if greater," 125% of the unpaid wages up to $7,500 and 50% of the wages in excess of $7,500.  § 8-4-109(3)(b)(I)-(II), C.R.S. 2022.  If the employee shows the employer willfully failed to pay, the penalty "shall increase" by 50%.  § 8-4-109(3)(c), C.R.S. 2022.

¶ 55    The relevant portion of section 8-4-109, as amended in 2023, states, "On or after January 1, 2023, if an employer fails . . . to pay" wages, the employer must pay the wages, "plus an automatic penalty" of the "greater of two times the amount of the unpaid wages . . . or one thousand dollars."  § 8-4-109(3)(b)(I), C.R.S. 2023; *see* Ch. 370, sec. 7, § 8-4-109, 2022 Colo. Sess. Laws 2628-29.  If the employee can show the employer willfully failed to pay, the penalty is "the greater of three times the amount of the unpaid wages . . . or three thousand dollars."  § 8-4-109(3)(b)(II), C.R.S. 2023.

¶ 56    When interpreting statutes, reviewing courts must "give effect to the General Assembly's purpose or intent . . . begin[ning] with the language of the statute itself."  *Martin v. People,* 27 P.3d 846,

23

851 (Colo. 2001). "If the statutory language unambiguously sets forth the legislative purpose, we need not apply additional rules of statutory construction to determine the statute's meaning." *Id.* "Absent legislative intent to the contrary, we presume a statute operates prospectively," and "retroactive application of a statute is generally frowned upon." *City of Colorado Springs v. Powell*, 156 P.3d 461, 464-65 (Colo. 2007).

¶ 57     The question of which version of the CWCA applies is a question of law that we review de novo. *Patterson Recall Comm., Inc. v. Patterson*, 209 P.3d 1210, 1216-17 (Colo. App. 2009).

## B.     Analysis

### 1.     Statutory Penalties

¶ 58     On appeal, Allen contends that he is entitled to a penalty of $10,093,275 (three times the unpaid wages found by the jury) under the 2023 amendment to the CWCA, an amount far greater than the $2,527,068.75 the district court attempted to award under the prior statute. *See* § 8-4-109(3)(b)(II), C.R.S. 2023. Allen argues that the amended version of the CWCA applies because Concord's "willful refusal to pay . . . continued through January 1, 2023, when the amendment went into effect."

¶ 59    This argument was not made in the district court and therefore wasn't preserved. We nevertheless exercise our discretion to address and reject this argument on its merits.

¶ 60    To begin, we agree with Allen that the court's failure to timely rule on his motion to amend the judgment renders the ruling void. C.R.C.P. 59(j); *De Avila v. Est. of DeHerrera*, 75 P.3d 1144, 1146 (Colo. App. 2003) ("Actions taken under C.R.C.P. 59 after the [sixty-three]-day period are outside the court's jurisdiction and are void."). But we are aware of no authority that prohibits us from considering the court's analysis in such an order, even though it has no operative effect.

¶ 61    For multiple reasons, we agree with the district court's analysis that the 2022 version of the CWCA is applicable. Unlike statutes that prescribe daily penalties for doing or not doing a particular act, no such provisions are contained in the 2023 version of the CWCA. *Cf. Associated Bus. Prods. v. Indus. Claim Appeals Off.*, 126 P.3d 323, 324, 326 (Colo. App. 2005) (discussing a statutory scheme that penalizes continuing violations at $300 per day, for a total of $24,900, for nonpayment of medically necessary

cell phone bills), *abrogated by*, *Colo. Dep't of Lab. & Emp. v. Dami Hosp., LLC*, 2019 CO 47M.

¶ 62     Allen's argument that statements contained in court filings made after the commencement of the case somehow constituted a new demand for payment that triggered the 2023 amended penalties finds no support in any authorities cited by Allen, or of which we are aware.  Moreover, that argument is inconsistent with the words of both the original and amended statute.

¶ 63     A statute is presumed to apply prospectively, not retroactively. *Powell*, 156 P.3d at 464-65.  Had the General Assembly intended that the enhanced penalties prescribed in the 2023 amendments be applied to prior events, it could have and would have said so.

¶ 64     Considering the plain language of the CWCA in both the 2022 and 2023 versions, and applying the required presumption, we conclude that the statute does not support the application of the amended statute to the facts of this case.  *Id.*; *Martin*, 27 P.3d at 851.

### 2. Interest, Costs, and Attorney Fees

¶ 65    We also conclude that Allen is entitled to both pre- and post-judgment interest, and we remand for entry of a revised judgment that includes such interest.

¶ 66    Finally, we conclude that Allen is presumptively entitled, under section 8-4-110(1)(b)(I), C.R.S. 2025, to an award of attorney fees both in the district court and on appeal. We are persuaded that *Lester v. Career Building Academy*, 2014 COA 88, sets forth the correct analysis for an award of attorney fees under the CWCA. We remand the case for further proceedings on attorney fees both in the district court and on appeal.[6]  *See* C.A.R. 39.1 ("In its discretion, the appellate court may determine entitlement to and the amount of an award of attorney fees for the appeal or may remand those determinations to the lower court or tribunal.").

---

[6] Allen has been successful in preserving the judgment entered in his favor on the jury verdict and for assessment of the statutory penalty, even though he has not succeeded in his claim for an enhanced penalty under the 2023 version of the CWCA. As a result, we conclude that Allen is the prevailing party on appeal.

27

## V.    Disposition

¶ 67    The judgment for unpaid wages or compensation based on the jury's verdict is affirmed.  The district court's order denying Allen's C.R.C.P. 59 motion by operation of law is reversed and the case is remanded for entry of the penalty prescribed by the 2022 version of the CWCA and an award of prejudgment and postjudgment interest. The case is also remanded to determine Allen's entitlement to attorney fees.

JUDGE J. JONES and JUDGE MEIRINK concur.